(687 P.2d 1380)
No. 55,211

Carolyn DeGraeve, *Appellant,* v. Southwestern Bell Telephone Co., *Appellee.*

Petition for review denied December 6, 1984.

Opinion filed October 4, 1984.

*John H. Fields,* of Carson, Fields, Asner & Carson, of Kansas City, for the appellant.

*Ruth A. Sears* and *Lawrence A. Dimmitt,* of Southwestern Bell Telephone Co., of Topeka, and *Zygmunt J. Jarczyk,* of Evans, Mullinix & Jarczyk, of Kansas City, for the appellee.

Before Swinehart, P.J., Abbott and Briscoe, JJ.

BRISCOE, J.: Carolyn DeGraeve, the plaintiff, appeals a judgment in favor of Southwestern Bell, the defendant, on her claim for damages for emotional distress resulting from termination of her telephone service.

In December of 1981, Southwestern Bell was providing telephone service to the home of the plaintiff and her son, Michael DeGraeve, in rural Leavenworth County. The plaintiff had paid all of her phone bills in full.

On December 18, 1981, at 2:20 p.m., a man identifying himself as the plaintiff's older son contacted Southwestern Bell and told the representative to disconnect the plaintiff's phone. The disconnection was completed on December 21 at approximately 3 p.m.

Neither the plaintiff nor her son had ordered the termination of phone service. They contacted Southwestern Bell and the phone was reconnected by 8 p.m. on December 22.

The plaintiff filed this action in February, 1982, seeking $30,000 in damages for emotional distress. This case went to trial, and the plaintiff testified that she was under considerable stress when her phone was cut off. She stated that she was sick with the flu and had a lawsuit pending, which she had filed to foreclose on a real estate contract. The defendant in that lawsuit had been harassing her, and while her phone was disconnected he drove out and parked in front of her home.

The service representative who had handled the disconnection request testified for Southwestern Bell at the court trial. She stated that she followed the phone company's usual procedure in processing the disconnection request. She verified the customer's name and telephone number and then processed the disconnection request. It was not Southwestern Bell's standard practice to call customers to verify that they wanted the disconnection. The service representative stated that she had handled 188 disconnection requests during the month in question and, in her 16 years of experience with Southwestern Bell, she could not recall another incident when an impostor had cancelled someone's phone service.

The trial court entered judgment for the defendant, finding "that the failure of the defendant to make, an independent verification of a telephone disconnect request does not constitute a valid and sufficient tort, and that defendant corporation was not

negligent in failing to conduct an independent verification of the disconnect request."

The plaintiff raises one issue on appeal: whether the trial court erred in finding that the defendant owed the plaintiff no duty. We note upon review of the judgment entered by the trial court that the court did not find that the defendant owed no duty to the plaintiff. The court found that the defendant was not negligent in failing to verify the disconnection request. The issue, then, is whether the trial court erred in finding that the defendant was not negligent.

The plaintiff contends that this is not a negligence case. She argues that the defendant, as a public utility, owes the highest degree of care to its customers. In support of this argument, the plaintiff relies on language in *Kohler v. Kansas Power & Light Co.*, 192 Kan. 226, 229, 387 P.2d 149 (1963).

The "highest degree of care" language found in *Kohler* is derived from *Henderson v. Kansas Power & Light Co.*, 184 Kan. 691, 695, 339 P.2d 702 (1959). There, the plaintiff was severely injured by the defendant's high voltage power line. It was, however, the dangerous character of the power line in *Henderson*, rather than the defendant's status as a public utility, that required a high standard of care.

An ordinary negligence standard of care should be applied to a wrongful termination of service case. K.S.A. 66-107 provides that public utilities "shall be required to furnish *reasonably* efficient and sufficient service . . . ." (Emphasis added.) The plain language of the statute imposes a standard of ordinary care, not strict liability.

Other jurisdictions that treat interruption of public utility service as a tort require negligence for recovery. See Annot., 67 A.L.R.3d 76; Annot., 4 A.L.R.3d 594.

Here, the trial court found that Southwestern Bell was not negligent in failing to call the DeGraeves to confirm that they wanted the telephone disconnected. Negligence is a question of fact. *Schmeck v. City of Shawnee*, 232 Kan. 11, Syl. ¶ 5, 651 P.2d 585 (1982).

The standard of review of a trial court's findings of facts is set out in *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, 624 P.2d 420 (1981):

"When a verdict or judgment is attacked for insufficiency of the evidence, the

duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below." Syl. ¶ 1.

"Upon appellate review this court accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom." Syl. ¶ 2.

Here, the evidence supports the trial court's finding. There was no indication from the impostor's tone or manner that he was joking or playing a prank when he requested the disconnection. There was no evidence that this situation had ever arisen before. Although it would be possible for the phone company to verify requests with a phone call, the possibility that an impostor might cancel another's phone service was not reasonably foreseeable.

The trial court's decision was correct for another reason. There was no evidence of physical impact or injury. In *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 274, 662 P.2d 1214 (1983), the court held:

"It has long been the general rule in Kansas that there can be no recovery for emotional distress suffered by the plaintiff which is caused by the negligence of the defendant unless it is accompanied by or results in physical injury to the plaintiff. [Citations omitted.] This rule, however, does not apply where the injurious conduct is willful or wanton, or the defendant acts with intent to injure. [Citations omitted.]"

Here, no rational finder of fact could find that the defendant injured the plaintiff recklessly, willfully or intentionally. Nor could the defendant's conduct constitute outrage. See *Hoard v. Shawnee Mission Medical Center*, 233 Kan. at 279-80; *Schmeck v. City of Shawnee*, 231 Kan. 588, 592, 647 P.2d 1263 (1982).

Affirmed.