No. 120,510

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LARRY L. LUCAS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Statutory interpretation is a legal question over which appellate courts exercise unlimited review. The aim of statutory interpretation is to determine the legislature's intent based on the language it employed. When a statute's text is plain and unambiguous, courts apply that language as written and do not look to canons of construction or legislative history. Courts give common words their common meanings and neither add language to statutes nor delete statutory requirements.

2.

The folding knife in this case—which is 9 inches long when unfolded (5 1/2 inches when closed) with a 4-inch blade—is a dangerous or deadly cutting instrument of like character to those listed in K.S.A. 2017 Supp. 21-6304(c)(1).

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed March 27, 2020. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

1

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and LAHEY, S.J.

WARNER, J.: Under Kansas law, "a knife is not always a knife." *State v. Richardson*, No. 118,183, 2018 WL 5091749, at *3 (Kan. App. 2018) (unpublished opinion), *rev. denied* 310 Kan. __ (September 27, 2019). Based on this principle, Larry Lucas appeals his conviction of criminal possession of a weapon, claiming the 4-inch folding knife found in his truck did not meet the statutory definition of a "knife" under K.S.A. 2017 Supp. 21-6304(c)(1). But the folding knife is a dangerous or deadly cutting instrument with a sharp edge that can inflict injury. Thus, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of February 11, 2018, a Wichita police officer stopped Lucas for a traffic infraction. The officer arrested him after a records check revealed an outstanding bench warrant.

During the arrest, Lucas' wife arrived at the scene and consented to the officer's search of the Lucases' truck. This search revealed a folding knife in the truck's driver-side door. The knife measured 9 inches when opened (5 1/2 inches when closed) and had a 4-inch blade. At its widest point, the blade was approximately 1 1/4 inches across. Lucas told the officer he used the knife at work. Based on his possession of the knife and a November 2010 felony drug conviction, the State charged Lucas with criminal possession of a weapon by a convicted felon under K.S.A. 2017 Supp. 21-6304(a)(2).

Lucas filed a motion to dismiss, arguing the folding knife was not a "knife" prohibited under K.S.A. 2017 Supp. 21-6304(c)(1), which defines a knife for purposes of a criminal-possession offense as "a dagger, dirk, switchblade, stiletto, straight-edged

razor or any other dangerous or deadly cutting instrument of like character." Lucas argued that the instruments listed in the statute have a "single purpose" of inflicting harm by cutting or stabbing while his folding knife had other intended uses. The court denied his motion. The case proceeded to a bench trial, where the court found Lucas guilty and entered a sentence of 18 months in prison, then suspended the prison sentence and granted him probation for 18 months. Lucas appeals.

## DISCUSSION

K.S.A. 2017 Supp. 21-6304 criminalizes the possession of a weapon by individuals convicted of certain felonies. For purposes of this offense, a weapon is "a firearm or a knife." K.S.A. 2017 Supp. 21-6304(c)(2). Although these terms have commonly understood meanings, the statute defines the term "knife" as "a dagger, dirk, switchblade, stiletto, straight-edged razor or any other dangerous or deadly cutting instrument of like character." K.S.A. 2017 Supp. 21-6304(c)(1). The sole issue presented in this appeal is whether the folding knife found in the Lucases' truck is a prohibited "knife" under this statutory definition.

Statutory interpretation is a legal question over which appellate courts exercise unlimited review. *State v. Keel*, 302 Kan. 560, Syl. ¶ 4, 357 P.3d 251 (2015). The aim of statutory interpretation is to determine the legislature's intent based on the language it employed. 302 Kan. 560, Syl. ¶ 5. When a statute's text is plain and unambiguous, courts apply that language as written and do not look to canons of construction or legislative history. We give common words their common meanings and neither add language to statutes nor read out statutory requirements. 302 Kan. 560, Syl. ¶ 6.

Lucas argues his folding knife is not one of the knives listed in the statute or similar to the knives the statute prohibits. Dirks, daggers, and stilettos have fixed, tapered blades and are used for stabbing. Although straight-edged razors have folding, untapered blades, their sharpness and potential for concealment render them dangerous. And

3

switchblades are spring-loaded knives that historically have been used as weapons. Lucas contends his folding knife has none of these characteristics.

It is true, as Lucas notes, that the legislature's decision to define "knife" under K.S.A. 2017 Supp. 21-6304(c)(1) signals an intent that not all knives be prohibited. Indeed, Kansas courts have recognized the possibility that not all knives will meet this statutory definition. See *State v. Moore*, 38 Kan. App. 2d 980, 986, 174 P.3d 899 (2008) (excluding dull butter or putty knives used for spreading); *Richardson*, 2018 WL 5091749, at *3 (contrasting the defendant's fixed-blade knives to "a small whittling knife or multi-tool"); see also *State v. Harris*, No. 116,515, 2018 WL 473605, at *4 (Kan. App.) (unpublished opinion), *rev. granted* 308 Kan. 1598 (2018) (opining a plastic butter knife would not be considered a "knife" under the statutory definition).

But the district court did not err in concluding the folding knife here fell within the reach of the statute. There is no serious question that the folding knife could be used as a "dangerous or deadly cutting instrument." When unfolded, the knife measured 9 inches in length, with a 4-inch blade; it could certainly inflict injury. And the folding knife, like the other instruments listed in the statute, has at least one sharp edge and is capable of being used as a weapon. Lucas' argument—that the "single purpose" or "primary purpose" of the knife must be to inflict harm—would improperly add requirements to the statutory text and thus runs contrary to our principles of statutory interpretation. See *Keel*, 302 Kan. 560, Syl. ¶ 6. In short, the folding knife was a "dangerous or deadly cutting instrument of like character" to those listed in K.S.A. 2017 Supp. 21-6304(c)(1).

As a final note, we observe that Lucas phrased his claim before the district court as one of statutory interpretation. On appeal, he also presents a due-process argument, contending the State failed to produce evidence of a knife that meets his restrictive view of the statute. We need not consider whether we should reach this new argument, however, because we have already decided the folding knife at issue meets the definition

of a "knife" under a plain reading of K.S.A. 2017 Supp. 21-6304(c)(1). And we similarly need not consider whether less dangerous instruments not at issue here (such as a butter knife or steak knife, whether found at home or in a restaurant) would meet the statutory definition were a different set of circumstances presented. Accord *Cross v. Kansas Dept. of Revenue*, 279 Kan. 501, 507-08, 110 P.3d 438 (2005) (a person only has standing to bring a facial challenge to a statute if that person can show the statute is unconstitutional as applied to him or her).

The district court did not err when it found the folding knife here was a "knife" as defined by K.S.A. 2017 Supp. 21-6304(c)(1).

Affirmed.